STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTIONS
DOCKET NOS. CV-01-240
CV-01-241

PA P - York - 6/25/200~

DOUGLAS B. HUTCHINS, et al.,

Plaintiffs

v.

**DECISION
AND
ORDERS**

DONALD L. GARBRECHT
LAW LIBRARY

RONALD PATOINE,

ʹJUL 30 2003

Defendant

These consolidated cases involve alleged oral agreements concerning the ownership of three racehorses and the construction of a veterinary clinic. In CV-01-240 two veterinarians Dr. Douglas Hutchins of Lyman and Dr. Paul Kinnear of Staten Island have brought a three count amended complaint against a carpenter and horse trainer Ronald Patoine of Old Orchard Beach. The amended complaint alleges that an oral agreement was reached regarding the care, training, racing and ownership of a horse named Action Goal. The claim is that Dr. Kinnear would provide the horse, Dr. Hutchins would provide veterinarian services and Mr. Patoine would board, train and care for the horse. The other expenses and earnings, if any, would be split equally three ways. After about five years the horse would be bred with the net proceeds split. The claims are for breach of contract, unjust enrichment and specific performance/promissory estoppel. Mr. Patoine has filed a counterclaim against Dr. Kinnear for unpaid boarding and training fees for Action Goal and a horse named Image of Elegance through April of 1997 and has brought a counterclaim against both plaintiffs for two-thirds of the costs of maintaining Action Goal to date.

In CV-01-241 an amended complaint was brought by Dr. Hutchins against Mr. Patoine concerning a horse named All Star Edition where it is claimed that the horse was owned in equal shares. All Star Edition was eventually sold and has done very well for its new owners. The amended complaint raises the same three causes of action as CV-01-240. A counterclaim was filed seeking in Count I a promised bonus for carpentry work done at Dr. Hutchins' veterinary clinic, in Count II damages for unjust enrichment regarding the carpentry work, in Count III boarding and training expenses for another horse called Keystone Quick and in Count IV a claim for unjust enrichment involving Keystone Quick. The plaintiff then filed what were called additional claims or counterclaims to the counterclaims in the same three counts involving Keystone Quick.

A consolidated hearing was held, numerous exhibits were submitted and closing arguments were given.

This case involves three individuals who all clearly love horse racing and who acted consistently with an apparent tradition in their business of having oral agreements with undisclosed owners. These agreements, while officially frowned upon by the governing association, The United States Trotting Association, and while not consistent with the requirements of state harness racing commissions, are common. It also appears that in most cases they work out well enough. The individuals know and trust each other, their promises are good and the understandings are honored. When the relationship fails, as in these two cases, problems can develop with the legal requirements for written contracts, the obligation to clearly establish what was agreed to and the documentation of expenses.

Under the Maine Statute of frauds, 33 M.R.S.A. §51(5) "No action shall be maintained in any of the following cases: . . . Upon any agreement that is not to be

2

performed within one year from the making thereof." Here the alleged oral contracts for the joint ownership and sharing of expenses and earnings for the horses all extended beyond a year.

To prevail on a claim of unjust enrichment "a party must prove (1) that it conferred a benefit on the other party; (2) that the other party had 'appreciation or knowledge of the benefit' and (3) that the 'acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value.'" *Howard & Bowie, P.A. v. Collins*, 2000 ME 148, ¶13, 759 A.2d 707, 710.

Regardless of whether promissory estoppel might otherwise apply, see its definition at *Daigle Commercial Group, Inc. v. St. Laurent*, 1999 ME 107, ¶14, 734 A.2d 667, 672, it is not applicable in contracts claiming to last more than a year. See *Daigle* at ¶14 and the cases cited there.

The question then becomes whether the theory of unjust enrichment can provide any remedy to the plaintiff veterinarians or the defendant. In answering that question it is necessary to both determine what the parties agreed to and did and how the facts match the requirements of unjust enrichment.

While there is a dispute among the parties as to what was agreed to, the documents that are in evidence are very helpful in establishing what the arrangements really were. The payments regarding All Star Edition and China Blaze, another horse that was indirectly involved in this case, and the payments of stake fees and insurance fees by the veterinarians after their ownership in Action Goal was supposedly transferred to Mr. Patoine convinces me that the parties entered into an agreement to share expenses, work and earnings for the horses. A stake race is a race with greater potential purses involving generally faster horses. In order to participate a stake fee

3

must be paid in advance to reserve a place for the horse. Later a separate fee must be paid if the horse actually races. It would be illogical for business people to pay a stake fee on a horse they did not own.

I do find that the requirements of unjust enrichment have been met as horses or veterinary services were provided to Mr. Patoine, he knew of the benefit and it would be inequitable for him to retain the benefit without paying its value. Assessing damages is far more difficult as Mr. Patoine, with some temporary exceptions, did board and train the horses for which he should be compensated. Additionally, one horse had minimal earnings and was transferred to Mr. Patoine. Another had modest earnings and is now being bred while the third was sold and then became very successful under new ownership and training. Neither side has produced financial records, other than the lifetime earnings for each horse, which are very helpful. The individuals involved are good with horses but in these cases were not particularly good accountants.

The horse Action Goal is now in the care of Mr. Patoine. I am unable to determine whether funds should be transferred to or from Mr. Patoine once Action Goal's earnings and expenses are balanced. Since Action Goal is really owned by Doctors Hutchins and Kinnear and Mr. Patoine and it would be unjust for Mr. Patoine to retain the benefit of the horse's foals it shall be sold within 90 days and the net proceeds from the sale shall be divided equally among them, one-third for each person. The parties may obviously agree to other arrangements if they wish to. The counterclaims regarding Action Goal and Image of Elegance likewise fail given the lack of written contracts, the imprecision of the financial information and the decision to have Action Goal sold as the just resolution of the dispute regarding Action Goal.

4

The horse All Star Edition was sold for $22,500. Since then it has done very well with lifetime earnings of about $150,000, nearly all of which are under its new owners. I will order that the sale proceeds of $22,500 be divided equally between the owners Dr. Hutchins and Mr. Patoine. I cannot determine what the net earnings of All Star Edition have been since it was sold as its expenses are unclear and I cannot find that the horse was likely to have achieved those earnings without a change in ownership, trainers and racing locations.

Keystone Quick made very little money and was given to Mr. Patoine. No money will exchange hands for Keystone Quick as I cannot determine that it would be just to have either Dr. Hutchins or Mr. Patoine pay the other since the horse was given to Mr. Patoine and since he had kept the earnings from the horse after the first year.

Lastly, I am not convinced that there was an agreement to pay Mr. Patoine a bonus beyond his wage of $17.00 per hour for his carpentry services. If there was, there was no promise as to the amount of the bonus.

The entries are:

In CV-01-240 Judgment for the defendant on Counts I and III of the amended complaint. On Count II Action Goal shall be sold within 90 days and the net proceeds divided in equal shares among the three parties. Judgment for the plaintiffs on the counterclaim.

In CV-01-241 Judgment for the defendant on Counts I and III of the amended complaint and on Counts I, II and III of the counterclaim of November 20, 2001 to the counterclaim. Judgment for the plaintiff against the defendant in the amount of $11,250.00, interest and costs on Count II of the amended complaint. Judgment for the defendant on the counterclaim.

Dated:     June 25, 2003

PLAINTIFFS:   Ronald Caron, Esq.
              311 Main St
              Saco  Me  04072

DEFENDANT:    Peter Schroeter, Esq.
              SMITH ELLIOTT SMITH AND GARMEY
              PO Box 1179
              Saco  Me  04072

Paul A. Fritzsche
Justice, Superior Court